FILED
John E. Triplett, Acting Clerk
United States District Court

By casbell at 10:05 am, Sep 03, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

NATASHA TRINIQUE SANKS,

        Plaintiff,

        v.

ANDREW SAUL, Commissioner of Social
Security,

        Defendant.

CIVIL ACTION NO.: 5:19-cv-63

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Donald B. Fishman ("the ALJ" or "ALJ Fishman") denying her claim for Supplemental Security Income. Plaintiff urges the Court to reverse and remand the ALJ's decision. Doc. 16 at 9, 11. Defendant asserts the Commissioner's decision should be affirmed. Doc. 17 at 2. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for supplemental security income on January 21, 2016, alleging she became disabled on June 1, 2014 due to fibromyalgia, severe anxiety, ADHD, depression, hypertension, pain, cervical spine damage and problems with her hands, and major depression with agoraphobia. Doc. 12-2 at 21 (R. 20). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On September 27, 2018, ALJ Fishman held a video hearing, at which Plaintiff, her sister, and her attorney, appeared in

Waycross, Georgia.  Doc. 12-2 at 17 (R. 16).  Mark Leaptrot, a vocational expert, also appeared

at the hearing.  Id.  ALJ Fishman found Plaintiff was not disabled within the meaning of the

Social Security Act ("the Act") since January 21, 2016.  Id.  The Appeals Council denied

Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final

decision of the Commissioner for judicial review.  Id. at 5 (R. 4).

Plaintiff, born on June 26, 1982, was 36 years old when ALJ Fishman issued his final

decision and 33 years old on her alleged disability onset date.  Id. at 23 (R. 22).  She has a

limited education.  Id.  Plaintiff's past relevant work experience includes work as a janitor and

receiving clerk.  Id.

## DISCUSSION

### I.      The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or
> mental impairment or impairments are of such severity that [s]he is not only
> unable to do [her] previous work but cannot, considering [her] age, education, and
> work experience, engage in any other kind of substantial gainful work which
> exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds

to step three.  The third step requires a determination of whether the claimant's impairment

meets or equals one of the impairments listed in the Code of Federal Regulations and

acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful

activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v.

Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the

listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential

evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from

performing past relevant work, i.e., whether the claimant has the residual functional capacity to

perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693

(11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the

claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in

original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is

unable to perform her past relevant work, the final step of the evaluation process determines

whether she is able to make adjustments to other work in the national economy, considering her

age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be

awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity since January 21, 2016, her application date. Doc. 12-2 at 19 (R. 18).  At step two, ALJ Fishman determined Plaintiff had fibromyalgia, ADHD, anxiety disorder, and carpal tunnel syndrome on the right—conditions considered severe under the regulations.  Id.  However, at the third step, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  Id. Additionally, the ALJ noted Plaintiff's non-severe impairments—including alleged migraines, seizures, degenerative disc disease of the lumbar and cervical spine, and depression—have either not been shown to cause any significant work-related limitations or are not supported by medical evidence and are not medically determinable.  Id.  The ALJ found Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following exceptions: no limitations on sitting, standing, or walking; occasionally climb ladders, scaffolds, ramps and stairs; frequently handle and finger with the right hand; occasionally perform firm grasping; avoid working with the public and in close coordination with others in the workplace; and avoid fast paced, time-sensitive work with strict time demands.  Id. at 21 (R. 20).  At the next step, ALJ Fishman determined Plaintiff could not perform any of her past relevant work.  Id. at 23 (R. 22). The ALJ concluded at the fifth and final step that Plaintiff could perform the jobs of document preparer, addresser, and order clerk, all of which are jobs at the sedentary level and which exist in significant numbers in the national economy.  Id. at 24 (R. 23).

## II.    Issues Presented

Plaintiff enumerates as error two issues.  First, Plaintiff argues the ALJ failed to weigh the opinion of a treating care provider, nurse practitioner Pushpa Singh.  Doc. 16 at 2.  Second,

4

Plaintiff argues the ALJ failed to sufficiently develop the record regarding Plaintiff's physical impairments.  Id.

### III.     Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply

correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at \*4 (M.D. Fla. Jan. 12, 2012).

**IV.     Whether the ALJ Erred by not Considering the Opinion of NP Singh**

Plaintiff argues ALJ Fishman erred by not discussing the opinion of nurse practitioner Pushpa Singh ("NP Singh"). Doc. 16 at 9. The Commissioner responds the ALJ did not err because NP Singh was not an acceptable medical source, her assessment was not a medical opinion, and the ALJ's discussion of the evidence allows the Court to follow his reasoning. Doc. 17 at 6, 10.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a), 416.927(a)). When Plaintiff's administrative proceeding occurred, the governing regulation defined a "medical opinion" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis, and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a); 416.927(a). Indeed, "[t]he administrative law judge [is] not required to state what weight he assigned to medical records that did not qualify as medical opinions." Romero v.

Comm'r of Social Security, 752 F. App'x 906, 908 (11th Cir. 2018).  Rather, "[a]n

administrative law judge is obligated to assign a weight only to a statement that constitutes a

medical opinion."  Id. (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)).

The opinions of non-treating doctors, such as a one-time examiner, or from non-

acceptable medical sources, such as a nurse practitioner, are not entitled to deference or special

consideration.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004).

Contrary to Plaintiff's assertion, NP Singh cannot be considered a treating source because nurse

practitioners are not listed in the regulations as acceptable medical sources.  See 20 C.F.R.

§§ 404.1502, 404.1513(a), (d); SSR 06-03p (2013) (excluding nurse practitioner from the list of

"acceptable medical sources" whose opinions may be considered in determining the existence of

an impairment); Medina v. Soc. Sec. Admin., 636 F. App'x 490, 493 (11th Cir. 2016)

(explaining that nurse practitioner is not considered a treating source because nurses are not

listed in the regulations as an acceptable medical source).  Indeed, opinions from medical sources

who are not acceptable medical sources and from nonmedical sources should be considered, but

not every factor for weighing opinion evidence will apply in every case; it depends on the

particular facts of each case.  20 C.F.R. § 404.1527(f)(1).  An ALJ "generally should explain the

weight given to opinions from these sources, or otherwise ensure that the discussion of the

evidence in the determination or decision allows a claimant or subsequent reviewer to follow the

[ALJ's] reasoning, when such opinions may have an effect on the outcome of the case."

20 C.F.R. § 404.1527(f)(2).  Furthermore, SSR 06-03p instructs ALJs to evaluate the opinions of

"other sources" on "issues such as impairment severity and functional effects."  2006 WL

2329939, at *3.  To this end, SSR 06-03p lists certain factors that an ALJ may apply to his

opinions, including the length of the relationship between the other source and the claimant, the

frequency of such visits, the consistency of the opinions with the other evidence, the degree to

which the source explains and presents evidence to support the opinion, and the other source's

specialty.  Id. at 5.  Even so, the ALJ need not "specifically refer to every piece of evidence in

his decision, so long as the ALJ's decision . . . is not a broad rejection" that suggests the ALJ did

not consider the record as a whole.  Dyer, 395 F.3d at 1211.

The Court must first determine whether the disputed portion of NP Singh's pain

evaluation form, doc. 12-25 at 2 (R. 1209), contains any medical "opinion" reflecting a judgment

about the nature and severity of Plaintiff's impairments.  See 20 C.F.R. § 404.1527(a) ("Medical

opinions are statements from acceptable medical sources that reflect judgments about the nature

and severity of your impairment(s).").  The pain evaluation form contains six numbered inquiries

with accompanying blanks for the provider to fill in.  Items 1, 2, and 3 do not ask for an opinion

or any sort of medical judgment; rather, these items ask the provider to record the patient's

responses to factual inquiries concerning the patient's subjective view of the location, severity,

and duration of patient's pain.  Plaintiff does not argue the ALJ erred by failing to discuss

Plaintiff's self-reported symptoms in Items 1, 2, and 3.  Item 4 asks the provider to answer

whether the patient's complaints are credible.  This portion arguably asks for a medical opinion

from the provider, but NP Singh declined to provide any such opinion, and Plaintiff does not

argue the ALJ should have discussed NP Singh's response to Item 4.  Item 6 asks the provider to

state in her "professional opinion" whether the patient can return to work.  In response, NP Singh

wrote "yes."  Id.  Despite the language of the inquiry in Item 6, NP Singh's response to that

inquiry is not a medical opinion.  Under the regulations, "the ultimate issue of disability is left to

the determination of the Commissioner; and a statement by a medical source that a claimant is

'disabled' or 'unable to work' is not binding on the ALJ."  Tubbs v. Saul, CA 18-0376-MU,

2019 WL 2552217, at *4 (S.D. Ala. June 20, 2019) (quoting Symonds v. Astrue, 448 F. App'x

10, 13 (11th Cir. 2011)).  Accordingly, NP Singh's statement that Plaintiff can work is not a

medical opinion.  Id.  Moreover, Plaintiff does not argue the ALJ should have discussed NP

Singh's response to Item 6.

The portion of the form creating this dispute, Item 5, is the question: "How often during a

typical workday is your patient's experience of pain or other symptoms severe enough to

interfere with attention and concentration needed to perform even simple work tasks?".  Id.  NP

Singh answered with a check-mark next to "constantly."  Id.  Plaintiff argues NP Singh's check

next to "constantly" constitutes a medical opinion, which demonstrates Plaintiff has "disabling

limitations," and, therefore, the ALJ's failure to discuss it requires remand.  Doc. 16 at 11.

NP Singh's check-mark in Item 5 does not constitute a medical opinion.  Review of the

form demonstrates Item 5 merely asks for the provider to record the patient's subjective

assessment of how often her pain would interfere with her attention and concentration.  This is

consistent with Items 1, 2, and 3, asking for the patient's subjective assessments of location,

severity, and duration of pain.  Therefore, NP Singh's check-mark in Item 5 merely constitutes a

record of Plaintiff's own statements regarding her subjective view of the effects of her pain.

Because NP Singh's check-mark in response to Item 5 does not constitute a medical

opinion and merely constitutes a recording of Plaintiff's complaints, the ALJ was not required to

discuss it in his decision.  See, e.g., Francis v. Comm'r of Soc. Sec., 414 F. App'x 802, 804 (6th

Cir. 2011) (finding no error in ALJ's failure to mention provider's "pain-related statement . . .

[because] it merely regurgitates [plaintiff's] self-described symptoms").  In Romero, the

Eleventh Circuit Court of Appeals affirmed the decision of the ALJ who found the plaintiff's

medical records did not qualify as medical opinions, as they mentioned only the plaintiff's

"physical complaints, his medical history, the results of his physical examinations and laboratory tests, and recommendations for and responses to treatment," and "failed to address [plaintiff's] ability to work."  752 F. App'x at 908; compare Winschel, 631 F.3d at 1179 (finding claimant's treatment notes constituted medical opinions because the notes contained "a description of [his] symptoms, a diagnosis, and a judgment about the severity of his impairments").  NP Singh's check-mark in Item 5 merely shows Plaintiff reported her pain "constantly" interfered with her attention and concentration; it does not reflect an opinion by NP Singh that Plaintiff's pain actually did interfere with her attention.  Moreover, NP Singh expressly declined to offer any statement about the credibility of plaintiff's pain complaints, and, to the extent there is any statement reflecting judgment, it shows that Singh discounted or rejected Plaintiff's subjective complaints by opining Plaintiff could return to work.  Accordingly, the Court finds NP Singh's pain evaluation is not a medical opinion, but is merely another piece of evidence.  As already noted, the ALJ need not "specifically refer to every piece of evidence in his decision."  Dyer, 395 F.3d at 1211.  Therefore, the ALJ committed no error in failing to specifically refer to NP Singh's pain evaluation form.

Alternatively, the ALJ's failure to address NP Singh's pain evaluation form is harmless error because the only judgment contained in the record is consistent with the ALJ's ultimate finding of non-disability, which the Court finds is based on substantial evidence.  In his decision, the ALJ addressed Plaintiff's "complaints of swelling and chronic pain all over," noting "physical examination after physical examination do not show any decrease in strength, and document full range of motion, no swelling, and no atrophy."  Doc. 12-2 at 22 (R. 21).  Exhibit 26F, which the ALJ cited as support for this proposition, refers to multiple records of appointments with Dr. Charles Galea of Satilla Rheumatology.  In fact, NP Singh appears to

10

have taken the notes of the July 26, 2018 visit and submitted her report for the doctor's review—

just two months before filling out the pain evaluation form.  Doc. 12-24 at 8 (R. 1157).  In his

report, Dr. Galea notes Plaintiff's complaints of joint pain and pain related to fibromyalgia.  Id.

at 3–8 (R. 1152–57).  His examination reveals Plaintiff had "achy and stiff hands in [the]

morning" and general tenderness to her cervical and lumbar spine, hips, and knees.  Id. at 5–6 (R.

1154–55).  He also reported her gait was normal.  Id.  Regarding Plaintiff's shoulders, elbows,

and pelvis, the doctor found no tenderness, swelling, or limitation to her range of motion.  Id.

His assessment diagnoses Plaintiff with fibromyalgia, cervicalgia (neck pain), fatigue, and carpal

tunnel syndrome.  Id. at 7 (R. 1156).  He ordered a prescription for Lyrica and Baclofen to treat

the pain in Plaintiff's feet and neck, advised her to seek out exercise programs "including aerobic

exercises, core strengthening exercises, pilates, yoga, walking, water aerobics, stretching, Tai

Chi," and counseled her to adhere to her prescribed medications.  Id.  A May 2018 examination

with Dr. Galea, which the ALJ also cites, reports the same tenderness in the cervical and lumbar

spine but no tenderness, swelling, or limitation to range of motion in the shoulders, elbows,

hands, feet, and ankles.  Id. at 12–13 (R. 1161–62).  Plaintiff was recommended low impact

exercise for her joint pain and prescribed Topamax.  Id.

Three other doctors also examined Plaintiff.  A 2015 physical exam with Dr. Justin

Harrell of Coffee Regional Medical Center shows normal neck and back inspection, and in

Plaintiff's hands and feet, no tenderness, no swelling, and normal range of motion.  Doc. 12-12

at 7 (R. 440).  In a 2016 physical exam with Dr. Paul Lenzo of Coffee Regional Medical Center,

Plaintiff's neck inspected normal, was non-tender, and had a painless range of motion, though

her back was tender.  Doc. 12-11 at 42 (R. 399).  Another 2016 examination, this one with Dr.

Michael Hoffstetter of CRH Physician Practices, shows strength at 5/5, no weakness, normal gait

and station, and no difficulty with walking.  Doc. 12-18 at 16 (R. 851).  The ALJ also considered

the "minor findings on [Plaintiff's] cervical and lumbar spine" revealed by MRIs and a CT scan,

which were taken at Coffee Regional Medical Center between October 2015 and April 2016.

Doc. 12-2 at 22 (R. 21).  The record includes one MRI of the lumbar spine, one MRI of the

cervical spine, and one CT scan of the lumbar spine.  Exhibit 6F includes an MRI and a CT scan.

Doc. 12-11 (R. 359).  The MRI was of Plaintiff's lumbar spine and shows mild disc bulging at

the L4-L5 disc and a small cyst at the midline but was otherwise normal.  Id. at 19–20 (R. 376–

77).  The CT scan was also of Plaintiff's lumbar spine and was normal, with no fracture,

dislocation, or stenosis.  Id. at 37 (R. 394).  Exhibit 7F, which the ALJ cited here, includes Dr.

Hewatt Sims' assessment of the first MRI and notes from a physical examination noting normal

gait, supple neck, no edema, and all motors 5/5.  Doc. 12-12 at 15–16 (R. 448–49).  The

recommended course of treatment was physical therapy.  Id.  Finally, Exhibit 20F is the record of

the cervical spine MRI, which showed mild protrusion and stenosis of the C3-C4 disc and

congenital fusion of the C4-C5 disc, which indicated neck pain.  Doc. 12-21 at 32 (R. 1034).

Assuming for the sake of argument the ALJ erred when he did not mention NP Singh's

pain evaluation, the Court finds any error to be harmless for several reasons.  First, substantial

evidence shows the ALJ considered more authoritative medical opinions on the same subject—

including opinions from doctors at Satilla Rheumatology, where NP Singh works—which

support his rejection of Plaintiff's subjective complaints of pain.  See Doc. 12-2 at 22 (R. 21)

("The claimant's reports to her doctors are not consistent with the actual findings made by those

doctors."); see also Dyer, 395 F.3d at 1212 (finding ALJ may reject claimant's subjective

complaints that are contradicted by the medical record when he articulates the contrary evidence

as his reasons for doing so).  While it is true Plaintiff may have suffered from pain due to back

and neck problems and her fibromyalgia, the record is devoid of objective medical evidence

confirming the severity of her alleged pain.[1]  NP Singh's opinion does not counter this lack of

objective medical evidence.  Second, the ALJ's discussion of the evidence allows the Court to

follow his reasoning.  ALJ Fishman identified certain medical reports as being inconsistent with

limitations Plaintiff alleged and considered that inconsistency when evaluating Plaintiff's

credibility.  Third, given the record as a whole, "no further findings could be made that would

alter the ALJ's determination" that Plaintiff had, on her last date of eligibility, the residual

capacity to perform sedentary light work.  Ware v. Schweiker, 651 F.2d 408, 412 (5th Cir. 1981).

To the extent NP Singh provides an opinion on Plaintiff's functionality that supports a finding of

disability, it is completely undermined by her subsequent opinion that Plaintiff can return to

work.  Thus, remand to reconsider NP Singh's pain evaluation would be a "wasteful corrective

exercise."  Id.  Accordingly, this enumeration of error is without merit.

## V.      Whether the ALJ Failed to Develop the Record Regarding Plaintiff's Physical Impairments

Plaintiff argues the ALJ did not fully and fairly develop the record; namely, Plaintiff

asserts the ALJ erred by not ordering a consultative examination to determine Plaintiff's ability

to work and the extent of the effects of her fibromyalgia.  Doc. 16 at 11–13.  Plaintiff asserts "the

---

[1]      A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms.  Dyer, 395 F.3d at 1210.  "In order to establish a disability based on testimony of pain and other symptoms," a claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence."  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).  The ALJ must provide specific reasons for discrediting the claimant's complaints.  Id.  But at bottom, "credibility determinations are the province of the ALJ, and [the court] will not disturb a clearly articulated credibility finding supported by substantial evidence."  Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014).

record was barren of treating or examining opinions relating to Plaintiff's functionality." Id. at

12.  Plaintiff's counsel represented at the hearing, "We weren't able to get any treating source

statements.  Her treating sources refused to fill out the paperwork."  Doc. 12-2 at 36 (R. 34).  The

Commissioner responds there is sufficient evidence in the record to support the ALJ's finding,

Plaintiff failed to show the record contains evidentiary gaps resulting in prejudice, and the

ultimate finding of disability need not be based on a doctor's opinion but is in the sole province

of the ALJ.  Doc. 17 at 10–13.

Although the ALJ generally has an obligation to develop the record, the ALJ did not err

by failing to order a consultative examination to inquire into Plaintiff's fibromyalgia.[2]  "Even

though Social Security courts are inquisitorial, not adversarial, in nature, claimants must

establish that they are eligible for benefits."  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d

1253, 1269 (11th Cir. 2007).  The administrative law judge has a duty to develop the record

where appropriate but is not required to order a consultative examination as long as the record

contains sufficient evidence for the administrative law judge to make an informed decision.

Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted).

It is only where a consultative examination is necessary for the ALJ to make a decision

due to some conflict, ambiguity, or other insufficiency in the medical evidence that the

regulations require an ALJ to order a consultative examination.  See 20 C.F.R. § 404.1519a(a)(2)

("When we purchase a consultative examination, we will use the report from the consultative

examination to try to resolve a conflict or ambiguity if one exists.  We will also use a

---

[2]    "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues.  Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals."  See https://www.mayoclinic.org/diseases-conditions/fibromyalgia/symptoms-causes/syc-20354780 (last visited Sept. 3, 2020).

consultative examination to secure needed medical evidence the file does not contain such as

clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."); 20 C.F.R.

§ 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole,

both medical and nonmedical, is not sufficient to support a decision on your claim.").  "The

failure of an ALJ to order a consultative examination, when such an evaluation is necessary to

make an informed decision, constitutes justifiable cause for a remand to the Commissioner."

Rease v. Barnhart, 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006) (remanding based on ALJ's

failure to develop the record because ALJ did not: (1) subpoena missing psychological records

requested by the claimant; (2) re-contact the claimant's treating physician despite new medical

records showing changes to claimant's spine and a new diagnosis of fibromyalgia; and (3) obtain

a comprehensive mental status examination as ordered by the Appeals Council) (citing Reeves v.

Heckler, 734 F.2d 519 (11th Cir. 1984)).[3]  "In determining whether it is necessary to remand a

case for development of the record, [a court should] consider[] 'whether the record reveals

evidentiary gaps which result in unfairness or clear prejudice.'"  Salazar v. Comm'r of Soc. Sec.,

372 F. App'x 64, 67 (11th Cir. 2010) (quoting Brown v. Shalala, 44 F.3d 931, 935 (11th Cir.

1995)).

The evidence Plaintiff cites to establish that the ALJ was required to order a consultative

examination appears in the record as Exhibits 1A and 3A.  Doc. 16 at 12.  These exhibits are

Disability Determination Explanation records by Disability Determination Services ("DDS")

state agency consultants.  Doc. 12-3.  Plaintiff incorrectly asserts "the ALJ relied on no opinions,

---

[3]     In Reeves, the Eleventh Circuit vacated and remanded where the ALJ failed to order a
consultative examination by an orthopedist even though the Social Security Administration's consulting
doctor recommended such an evaluation.  734 F.2d 519 (11th Cir. 1984).  Here, the Disability
Determination Services ("DDS") consultants' notes, which the ALJ afforded significant weight as to
Plaintiff's mental limitations and some weight regarding her physical limitations, found a consultative
examination was not required.  Doc. 12-3 at 6 (R. 78).

and had no guidance aside from the dated opinions of the State agency consultants," which,

Plaintiff argues, as opinions of non-examining reviewing physicians should be entitled to little

weight and, "taken alone, [do] not constitute substantial evidence to support an administrative

decision."  Doc. 16 at 12 (citing Swindle v. Sullivan, 914 F.2d 222, 226, n.3 (11th Cir. 1990)).

Contrary to Plaintiff's contention, the ALJ considered medical treatment records from

four separate doctors and MRI and CT scans regarding Plaintiff's pain and swelling.  The ALJ

also considered medical records from Plaintiff's neurologist and psychiatrist.  Doc. 12-2 at 22

(R. 21).  The Court discerns no evidentiary gaps in the record before it.  Doctors who examined

Plaintiff submitted reports, and the ALJ procured reports from consulting doctors to aid his

understanding of those reports.  Though Plaintiff disagrees with the ALJ's conclusions, those

conclusions are supported by substantial evidence.  Nonetheless, Plaintiff discounts all of the

medical records the ALJ considered and argues that, in essence, an ALJ cannot make a decision

on a claimant's residual functional capacity unless a consultative examiner tells him exactly what

to decide.  But this approach would, "in effect, confer upon the treating source the authority to

make the determination or decision about whether an individual is under a disability, and thus

would be an abdication of the Commissioner's statutory responsibility to determine whether an

individual is disabled."  SSR 96-5p, 1996 WL 374183, at *2.  Plaintiff's argument would rob the

ALJ of his role in assessing a claimant's residual functional capacity.  See 20 C.F.R.

§ 404.1546(c).  An ALJ does not "play doctor" by assessing a claimant's residual functional

capacity but instead properly "carrie[s] out his regulatory role as an adjudicator."  Castle v.

Colvin, 557 F. App'x 849, 853 (11th Cir. 2014).  Furthermore, the ALJ did not discount

Plaintiff's limitations, as he found that she did in fact have severe impairments that prevented her

from performing her past relevant work.  In light of the substantial evidence in the record,

including the vocational expert's testimony, the ALJ had the necessary information to determine Plaintiff's impairments, her residual functional capacity, and her ability to work.  Consequently, the ALJ did not err by not requesting a consultative examination, as the record was sufficiently developed.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court instructs any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 3rd day of September, 2020.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA